KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
JORDAN D. SEGALL (State Bar No. 281102)
jordan.segall@mto.com
ROSE LEDA EHLER (State Bar No. 296523)
rose.ehler@mto.com
MIRANDA E. REHAUT (State Bar No. 335748)
miranda.rehaut@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

*Attorneys for Defendants James Cameron,
Lightstorm Entertainment, Inc., Twentieth
Century Fox Film Corporation, The Walt
Disney Company, Avatar Alliance
Foundation, Industrial Light & Magic,
and Stan Winston Studio, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Q'ORIANKA KILCHER,<br><br>     Plaintiff,<br><br>   vs.<br><br>JAMES CAMERON, et al.,<br><br>     Defendants. | Case No. 2:26-cv-04832-WLH-DSR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Judge:  Hon. Wesley L. Hsu<br>Date:   August 28, 2026<br>Time:   1:30 p.m.<br>Ctrm:   9B |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................. 7

II.  BACKGROUND ................................................................................................. 9

    A.  Cameron Draws The 2005 Sketch To Show How A Human Actor's Features Could Come Through In An Alien Na'vi Face ........... 9

    B.  Kilcher Receives The 2005 Sketch And Cameron's Note In 2010 ...... 12

    C.  Neither Kilcher Nor The Public Perceived Any Resemblance Between Kilcher And Neytiri ............................................................... 13

III.  LEGAL STANDARD ....................................................................................... 13

IV.  ARGUMENT .................................................................................................... 14

    A.  Laches Bars Kilcher's Lanham Act Claim .......................................... 15

        1.  Kilcher's 16-Year Delay Presumptively Bars Her Lanham Act Claim ................................................................................ 15

        2.  Defendants Were Prejudiced By Kilcher's Delay ...................... 17

    B.  Kilcher's Lanham Act Claim Alternatively Fails Because Her Complaint Concedes That The Alleged Use Went Unnoticed By The Public ........................................................................................... 19

    C.  Even If Kilcher Could Plead That The Public Recognized Any Resemblance Between Her And Neytiri (Which She Cannot), Her Lanham Act Claim Would Still Fail As A Matter Of Law ............ 21

        1.  Kilcher's False Endorsement Claim Fails As A Matter Of Law Under The *Rogers* Test ...................................................... 21

        2.  *Rogers* Prong One: Kilcher's Own Allegations Establish Artistic Relevance ................................................................... 22

        3.  *Rogers* Prong Two: Kilcher Does Not—And Cannot— Allege That Defendants Explicitly Misled Consumers ............. 23

    D.  Kilcher's False Designation Of Origin Theory Fails As A Matter Of Law Under *Dastar* ......................................................................... 25

    E.  The Court Should Decline To Exercise Supplemental Jurisdiction Over The State-Law Claims ............................................ 27

V.  CONCLUSION .................................................................................................. 28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aguila Mgmt. LLC v. Int'l Fruit Genetics LLC*,
2020 WL 736303 (D. Ariz. Feb. 13, 2020) ........................................................... 15

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) ................................................................................. 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 13

*Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*,
603 F.3d 1133 (9th Cir. 2010) .............................................................................. 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 14

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) .........................................................................passim

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) ............................................................................................... 21

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ............................................................................................... 27

*Caterpillar Inc. v. Lewis*,
519 U.S. 61 (1996) ................................................................................................. 14

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) ........................................................................... 15, 18

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ....................................................................................... 9, 25, 26

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) ..................................................................... 22, 23, 24

*Evergreen Safety Council v. RSA Network Inc.*,
697 F.3d 1221 (9th Cir. 2012) ....................................................................... 17, 18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Gen. Bedding Corp. v. Echevarria*,
  947 F.2d 1395 (9th Cir. 1991)............................................................................... 16

*Hara v. Netflix, Inc.*,
  146 F.4th 872 (9th Cir. 2025).........................................................................passim

*Harbour v. Farquhar*,
  245 F. App'x 582 (9th Cir. 2007)........................................................................ 26

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
  191 F.3d 813 (7th Cir. 1999)........................................................................ 17, 18

*Ileto v. Glock Inc.*,
  349 F.3d 1191 (9th Cir. 2003) .............................................................................. 13

*Jack Daniel's Properties, Inc. v. VIP Products LLC*,
  599 U.S. 140 (2023) ..................................................................................... 21, 22

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002)................................................................ 7, 15, 16, 17

*Kent v. Universal Studios, Inc.*,
  2008 WL 11338293 (C.D. Cal. Aug. 15, 2008) ............................................... 25, 26

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)................................................................................ 11

*Mattel, Inc. v. MCA Recs., Inc.*,
  296 F.3d 894 (9th Cir. 2002)................................................................................ 21

*Miller v. Glenn Miller Prods., Inc.*,
  454 F.3d 975 (9th Cir. 2006)................................................................................ 17

*Pesina v. Midway Mfg. Co.*,
  948 F. Supp. 40 (N.D. Ill. 1996)........................................................................... 20

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
  894 F.3d 1015 (9th Cir. 2018).............................................................................. 16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018)................................................................................ 28

*Punchbowl, Inc. v. AJ Press, LLC*,
  90 F.4th 1022 (9th Cir. 2024).................................................................... 9, 21, 22

-4-

*Rainero v. Archon Corp.*,
844 F.3d 832 (9th Cir. 2016) .................................................................................. 14

*Rat Pack Filmproduktion GmbH v. RatPac Ent., LLC*,
2024 WL 4452483 (C.D. Cal. Feb. 15, 2024) ..................................................... 8, 15

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) ........................................................................... passim

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) .................................................................................. 27

*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
627 F. Supp. 2d 1096 (N.D. Cal. 2008) .................................................................. 17

*Souza v. Exotic Island Enters., Inc.*,
68 F.4th 99 (2d Cir. 2023) ...................................................................................... 20

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ................................................................................ 26

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
875 F.3d 1192 (9th Cir. 2017) ................................................................................ 20

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966) ................................................................................................ 28

*Waits v. Frito-Lay, Inc.*,
978 F.2d 1093 (9th Cir. 1992) ................................................................................ 19

**FEDERAL STATUTES**

15 U.S.C. § 1125(a) ......................................................................................... 8, 14, 19

28 U.S.C. § 1367(c) ............................................................................................ 9, 27, 28

28 U.S.C. § 1367(d) ..................................................................................................... 28

Lanham Act, 15 U.S.C. § 1051 *et seq.* ............................................................... passim

**STATE STATUTES**

Cal. Civ. Proc. Code § 425.16 ................................................................................... 28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6)..............................................................passim

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff Q'orianka Kilcher alleges that Defendants misappropriated her likeness in the character of Neytiri, the lead female Na'vi character in the *Avatar* films, notwithstanding that Kilcher's likeness is not recognizable in Neytiri, either to Kilcher herself or the public. This lack of recognition is not surprising, as Neytiri is played by and resembles Zoe Saldaña. Yet, Kilcher seeks to bring a claim for violation of the Lanham Act, together with seven state-law claims.

Defendants deny that Kilcher's likeness appears in the on-screen character of Neytiri, or that Kilcher served as the "basis" or "source" of that character in the *Avatar* films in any respect. Defendants do agree, however, that no one can recognize Kilcher in Neytiri. As demonstrated below, even treating Kilcher's factual allegations as if they were true solely for purposes of Rule 12(b)(6), she has pleaded herself out of court for several, independent reasons.

First, Kilcher's Lanham Act claim fails, even before the substance is reached, for the threshold reason that laches bars the claim. *Avatar* was released in 2009. Kilcher filed her complaint in 2026. At the heart of Kilcher's complaint is the claim that, in or around 2005, Defendant James Cameron drew a sketch of Neytiri in early development for the firm and before Zoe Saldaña was cast to play the character that allegedly incorporated certain aspects of Kilcher's lower face (the "2005 Sketch"). Kilcher alleges that Cameron drew the sketch in part by looking at a photograph of her published in the *Los Angeles Times*. Compl. ¶¶ 49–50. Kilcher further alleges that, in 2010, Cameron's assistant screened *Avatar* for her and gave her a print of the 2005 Sketch, together with a note from Cameron stating that Kilcher's beauty had been an "early inspiration for Neytiri." *Id*. ¶¶ 49–50, 63. Kilcher now characterizes that note as "acknowledging his use of her likeness." *Id*. ¶ 175(d).

Laches bars an unreasonably delayed Lanham Act claim. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). Where, as here, the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

complaint's allegations establish laches, the Court can and should dismiss the claim under Rule 12(b)(6). *Rat Pack Filmproduktion GmbH v. RatPac Ent., LLC*, 2024 WL 4452483, at *3 (C.D. Cal. Feb. 15, 2024). Kilcher alleges that she possessed the 2005 Sketch and Cameron's note for *16 years* before filing suit. Kilcher's allegation that she did not know precisely how the sketch was supposedly used in the production process does not save her claim. Under her own pleading, Kilcher had notice of the alleged connection by 2010 and was obligated to investigate any claim she believed she possessed. Kilcher's delay was manifestly unreasonable, substantially prejudiced Defendants, and bars her Lanham Act claim.[1]

Second, Kilcher's attempt to plead around the time-bar dooms her claim on a different ground. Specifically, Kilcher alleges that she did not recognize her likeness in Neytiri until 2025, when she saw an interview with Cameron describing the purpose of the 2005 Sketch. Compl. ¶¶ 76–77, 87, 139. Kilcher further alleges that the general public did not recognize her in Neytiri, either. *Id.* ¶¶ 104, 139. These allegations do not excuse Kilcher's failure to investigate her claim in 2010, when she says she became aware of the alleged use. But the allegations do establish that Kilcher's Lanham Act claim fails on the merits. To state a Lanham Act claim under § 43(a)(1)(A), Kilcher must plausibly allege conduct likely to "cause confusion," "cause mistake," or "deceive" consumers concerning her affiliation with, sponsorship of, or approval of the *Avatar* films. 15 U.S.C. § 1125(a)(1)(A). If, as Kilcher affirmatively alleges, neither she nor the public recognized her likeness in Neytiri, then the alleged use could not plausibly have caused anyone to believe that Kilcher endorsed, sponsored, or was associated with the *Avatar* films.

---

[1] Kilcher's state-law claims likewise fail, among other reasons, under the state-law statutes of limitations that apply to those claims. The grounds for striking the state-law claims are set forth in Defendants' contemporaneously filed motion to strike under California's anti-SLAPP statute.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Third, Kilcher's Lanham Act claim fails under the *Rogers* test, which governs Lanham Act claims involving expressive works. Under *Rogers*, an alleged use of identifying material in an expressive work is only actionable if the use "(1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028 (9th Cir. 2024). Kilcher cannot plausibly allege that she satisfies that test. Within the last year, the Ninth Circuit applied *Rogers* and affirmed the Rule 12(b)(6) dismissal of a Lanham Act claim alleging the unauthorized use of a celebrity's *readily identifiable* likeness in an expressive work. *See Hara v. Netflix, Inc.*, 146 F.4th 872 (9th Cir. 2025). Kilcher's claim is far weaker than the failed claim in *Hara*, as her likeness is not recognizable at all.

Fourth, Kilcher's "false designation of origin" theory fails because "origin" under the Lanham Act refers to the producer of the goods sold in the marketplace, not to a person claiming an uncredited creative contribution embodied in those goods. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31–32 (2003). Kilcher does not allege that she produced the *Avatar* films or that any consumer believed she did. To the contrary, Kilcher expressly alleges that Defendants produced, distributed, promoted, licensed, and commercialized the franchise. Compl. ¶ 111.

Kilcher's only federal claim should be dismissed with prejudice. The Court should either decline to exercise supplemental jurisdiction over the state-law claims, *see* 28 U.S.C. § 1367(c)(3), or, if the Court retains jurisdiction, strike them under the anti-SLAPP statute.

## II.   BACKGROUND

### A.   Cameron Draws The 2005 Sketch To Show How A Human Actor's Features Could Come Through In An Alien Na'vi Face

Kilcher alleges that in 2005, during the development of *Avatar*, Cameron was working on designing Neytiri's appearance. Compl. ¶ 47. Around the same time,

Kilcher appeared in advertising for *The New World*, the 2005 motion picture in which she portrayed Pocahontas. *Id.* ¶ 49. Kilcher alleges that Cameron saw an ad featuring her image in the *Los Angeles Times*, *id.*:



According to Kilcher, Cameron used a discrete section of Kilcher's lower face from that image—"from just under the nose down to the chin"—as a reference for the 2005 Sketch, an early development drawing of Neytiri before Saldaña was cast to play the character. *Id.* ¶ 50. The sketch, which Kilcher reproduces in her complaint, looked like this:



ORIGINAL JAMES CAMERON SKETCH

-10-

*Id.* at p. 85.[2] Kilcher alleges that Cameron made the sketch available to other artists working on *Avatar. Id.* ¶ 51.

In an April 2024 interview showcasing a Parisian museum exhibit called "Tech Noir" (*id*. ¶ 76), Cameron explained the limited purpose of the 2005 Sketch[3]:

> I did this drawing to give the art department kind of an inspiration. I wanted her to be a person that we wanted to know…. The source for this was a photograph that was in the *LA Times* as part of the promotion for *The New World*. It was a young actress named Q'orianka Kilcher who played Pocahontas in *The New World*. So this is actually her lower face; she had a very interesting face…. Not that she was the inspiration for the character, but I just wanted to show how a specific person's look could come through in the character.

*See* Declaration of Kelly Klaus ("Klaus Decl.") ¶ 3 & Ex. 1 (15:18–16:42).

The immediately following portion of the same interview—which Kilcher conspicuously omits—distinguishes the 2005 Sketch from the character ultimately depicted on screen. As Cameron explained, once Zoe Saldaña was cast as Neytiri, the character was based on her: "The second we cast Zoe, we started—you know, Neytiri suddenly looked like Zoe. So the question is, how did we get to that point?" *Id.* ¶ 3 & Ex. 1 (16:43–16:53).

---

[2] Notwithstanding Kilcher's extensive repetition of conclusory techno-jargon (*e.g.*, "functional biometric source data," Compl. ¶ 1), it is obvious from looking at the 2005 Sketch that there was no artificial intelligence or machine-generated copying of any part of Kilcher's face in that sketch.

[3] The Court may consider Cameron's April 2024 interview because the Complaint refers extensively to the interview and because the interview is the basis for Kilcher's discovery-rule allegations. *See* Compl. ¶¶ 76–78, 87, 107, 139, 175(d); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (court may consider document incorporated by reference where "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**B.    Kilcher Receives The 2005 Sketch And Cameron's Note In 2010**

*Avatar* was released in 2009. Compl. ¶¶ 1, 61. In 2010, Kilcher alleges, she attended a charity event, where she had a chance encounter with Cameron. *Id.* ¶ 61. They struck up a friendly conversation and discussed their shared advocacy for Indigenous causes. *Id.* Afterward, Cameron invited her to stop by his office and pick up a gift. *Id.* ¶ 62. When she arrived, Cameron was not there, but Cameron's assistant screened *Avatar* for her and gave her a framed copy of the 2005 Sketch. *Id.* ¶ 63. Attached to the sketch was a note from Cameron stating: "Your beauty was my early inspiration for Neytiri. Too bad you were shooting another movie. Next time." *Id.* Kilcher now characterizes that note as "acknowledging his use of her likeness." *Id.* ¶ 175(d).

Kilcher does not allege that she raised any objection. Instead, she responded in a warm email: "I am so, so touched by the beautiful sketch you made of Neytiri!!! … I'm so thankful, humbled and touched that in some little way I was able to be a part of your inspiration for this important film." *Id.* ¶ 68. She displayed the sketch on her wall and alleges that she was "proud to have inspired Cameron in some small way." *Id.* ¶ 70.

Kilcher's subsequent conduct confirmed her enthusiasm for *Avatar* and the sketch. In 2017, Kilcher attended a meeting at Lightstorm's offices, "hoping to collaborate or at least be involved" in the *Avatar* sequels, though "nothing concrete materialized for her participation." *Id.* ¶ 71. In 2022, shortly before the release of *Avatar: The Way of Water*, she emailed Cameron a photograph of herself posing with the sketch and wrote: "Is it 'Next time' yet? I'm ready, let's go! ;)." *Id.* ¶ 72.

Since *Avatar*'s 2009 release, Defendants have continued "producing, distributing, promoting, licensing, and commercializing the *Avatar* film franchise." *Id.* ¶ 111. *Avatar: The Way of Water* was released in 2022. In November 2022, Kilcher attended a screening of that film at the Academy of Motion Picture Arts and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Sciences. *Id.* ¶ 73. The franchise's third installment, *Avatar: Fire and Ash*, was released in December 2025. RJN at 2–3.

> **C.     Neither Kilcher Nor The Public Perceived Any Resemblance Between Kilcher And Neytiri**

Kilcher alleges that *Avatar*'s unprecedented success made Neytiri an "iconic" character whose image "graced posters, toys, and advertisements around the globe." Compl. ¶ 59. Yet despite the character's ubiquity—and despite viewing *Avatar* in 2010 and *Avatar: The Way of Water* in 2022—Kilcher does not allege that she perceived any resemblance between herself and the on-screen character played by Saldaña. To the contrary, Kilcher alleges that she "did not discover Defendants' misappropriation" until August 2025 at the earliest. *Id.* ¶ 87.

Kilcher likewise alleges that no one in the general public perceived the supposed connection. According to the complaint, "the general public did not know Neytiri was based on Plaintiff until recently[.]" *Id.* ¶ 139.

Kilcher alleges that she saw Cameron's April 2024 Tech Noir interview on YouTube in August 2025—more than a year after the interview was published and 16 years after *Avatar* was released. *Id.* ¶¶ 76–77, 87. She filed this action in May 2026, asserting seven claims under California law and a single federal claim under the Lanham Act. Dkt. 1.

## III.    LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Pleading facts that are "merely consistent with" a defendant's liability is not sufficient. *Id.* at 678 (citation omitted). Neither is pleading legal conclusions couched as factual allegations. *Id.* The Court need not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). The complaint must contain sufficient concrete facts to elevate a plaintiff's

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

right to relief from merely "conceivable" to "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV. ARGUMENT

Kilcher's sole federal claim, and the only basis for this Court's subject matter jurisdiction,[4] arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). She alleges that Defendants' supposed use of her likeness either falsely implied that she endorsed or was affiliated with the *Avatar* films or constituted a false designation of origin.

Kilcher's Lanham Act claim fails for four independent reasons, any one of which is sufficient to support dismissal. First, it is barred by laches. Second, Kilcher's allegation that neither she nor the public recognized any resemblance between her and Neytiri defeats any plausible theory of consumer confusion. Third, the *Rogers* test forecloses her false endorsement theory. To the extent Kilcher pleads a separate false designation of origin claim, she does not and cannot plead that Defendants falsely designated the origin of the *Avatar* films. *See* Sections IV.A–D, *infra*. The Court should dismiss the Lanham Act claim with prejudice and decline to exercise supplemental jurisdiction over the state-law claims, or, in the alternative, strike them under California's anti-SLAPP statute. *See* Section E, *infra*.

---

[4] Kilcher asserts that the Court has diversity jurisdiction because the amount-in-controversy exceeds $75,000 and "complete diversity of citizenship exists between Plaintiff *and at least certain Defendants*." Compl. ¶ 9 (emphasis added). This is insufficient: "[T]he essential elements of diversity jurisdiction … must be affirmatively alleged in the pleadings." *Rainero v. Archon Corp.*, 844 F.3d 832, 840 (9th Cir. 2016) (cleaned up). The complaint does not contain facts sufficient to establish diversity jurisdiction, as the complaint does not allege complete diversity between Kilcher, on the one hand, and *all* Defendants, on the other. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

### A.    Laches Bars Kilcher's Lanham Act Claim

Kilcher's Lanham Act claim fails for the threshold reason that Kilcher's own allegations establish both elements of laches: unreasonable delay and prejudice. Kilcher alleges facts that placed her on notice of the supposed use she now challenges no later than 2010, yet she waited until 2026 to file suit. During that time, Defendants continued investing in and expanding the *Avatar* franchise.

The Lanham Act contains no statute of limitations. Under Ninth Circuit law, laches is the principal means of barring an unreasonably delayed claim. *Jarrow Formulas*, 304 F.3d at 835–37.

Although it is an affirmative defense, laches may be resolved under Rule 12(b)(6) when the defense appears on the face of the complaint. *See ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Courts dismiss claims on laches grounds at the pleading stage where "the allegations in the complaint, or in matters judicially noticeable, establish the defense." *Rat Pack Filmproduktion*, 2024 WL 4452483, at *3; *see also Aguila Mgmt. LLC v. Int'l Fruit Genetics LLC*, 2020 WL 736303, at *3 (D. Ariz. Feb. 13, 2020) (laches may be considered on the pleadings where "the elements of laches are apparent on the face of a complaint") (quotation omitted). This is such a case. Defendants' laches defense rests entirely on Kilcher's complaint and the materials it incorporates and requires no factfinding.

Laches requires "both an unreasonable delay by the plaintiff and prejudice to" the defendant. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). Kilcher's allegations establish both.

#### 1.    Kilcher's 16-Year Delay Presumptively Bars Her Lanham Act Claim

Although "laches and the statute of limitations are distinct defenses," courts assess the reasonableness of a plaintiff's delay by reference to the limitations period for the analogous action at law. *Jarrow Formulas*, 304 F.3d at 835–38. The "presumptive applicability of laches turns on whether the limitations period for the

-15-

analogous action at law has expired." *Id.* at 837. For claims under § 43(a)(1)(A), courts in the Ninth Circuit typically apply California's four-year limitations period for trademark infringement. *See, e.g.*, *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018). That period begins when the plaintiff "knew or should have known about his § 43(a) cause of action." *Jarrow Formulas*, 304 F.3d at 838 (citing *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 n.2 (9th Cir. 1991)).

A Lanham Act claim filed within the analogous limitations period is presumptively timely; where a claim is filed after that period, "the presumption is that laches is a bar to suit." *Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1139–40 (9th Cir. 2010) (quoting *Jarrow Formulas*, 304 F.3d at 837). "The presumption of laches is triggered if *any* part of the claimed wrongful conduct occurred beyond the limitations period," even if the alleged violation continued afterward. *Jarrow Formulas*, 304 F.3d at 837 (emphasis added).

Kilcher's own allegations trigger that presumption. She alleges that 21 years ago, Cameron drew the 2005 Sketch and, in her words, "traced and replicated the lower half of [Kilcher's] face (from just under the nose down to the chin)" onto the sketch. Compl. ¶¶ 49–50.[5] In 2010, Kilcher saw *Avatar* and received a copy of the 2005 Sketch, together with a note from Cameron stating: "Your beauty was my early inspiration for Neytiri." *Id.* ¶ 63. Kilcher responded that she was "thankful, humbled, and touched that in some little way [she] was able to be a part of [Cameron's] inspiration for this important film." *Id.* ¶ 68. She now characterizes Cameron's note as "acknowledging his use of her likeness." *Id.* ¶ 175(d).

Those allegations do not establish that Kilcher's likeness appears in the on-screen character; Defendants deny that it does. But they plainly establish that, under

---

[5] Defendants do not concede that Kilcher is readily identifiable even in the 2005 Sketch—it is clear from looking at the sketch that she is not—but the Court is not required to reach that question to grant this motion.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Kilcher's own theory, she was on notice no later than 2010 of the supposed connection on which her claim rests. By then, she possessed the 2005 Sketch at the center of her complaint, had viewed the film, and had received the note she characterizes as an acknowledgment of the alleged use. *Id.* ¶¶ 50, 63, 175(d). Kilcher therefore knew or, at minimum, should have known of the potential claim she now asserts 16 years before filing suit. Because the limitations period for the analogous action at law is only four years, laches presumptively applies.

Kilcher seeks to avoid that conclusion by alleging that, when she viewed *Avatar* and received the 2005 Sketch, she did not understand that "any actual usage of her image had actually occurred." *Id.* ¶ 66. But the statute of limitations is triggered by actual *or* constructive knowledge. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 980–81 (9th Cir. 2006). Because "constructive knowledge is judged from an objective reasonable person standard," a Lanham Act plaintiff is "chargeable with the information it might have received had due inquiry been made." *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1110 (N.D. Cal. 2008). At minimum, if, as Kilcher now contends, the 2005 Sketch and the 2010 note evidenced an actionable use of her likeness, those same materials required her to investigate that theory starting in 2010. Kilcher's failure to do so does not postpone the commencement of the limitations period. *See Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012) (plaintiff's "delay was unreasonable because it involved no evaluation or investigation of the claim").

### 2.   Defendants Were Prejudiced By Kilcher's Delay

"A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be 'inequitable' in light of the delay in bringing that claim." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999). Because the allegations in the complaint establish that Kilcher's claim arose at least as early as 2010, Defendants are entitled to a "presumption of prejudice." *Jarrow Formulas*, 304 F.3d at 839–40.

-17-

The presumption aside, the complaint also independently establishes prejudice. The Ninth Circuit recognizes "two chief forms of prejudice in the laches context—evidentiary and expectations-based." *Danjaq*, 263 F.3d at 955. Expectations-based prejudice arises when a defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Evergreen Safety*, 697 F.3d at 1227 (quoting *Danjaq*, 263 F.3d at 955). Continued investment in a costly motion-picture franchise whose installments share a common lead character while an alleged claimant remains silent is a paradigmatic example.

*Danjaq* is on point. The counterclaimant there asserted an ownership interest in the James Bond character and eight films released over several decades. 263 F.3d at 949–50. The Ninth Circuit held that the respondents were prejudiced because they had made substantial investments in developing, marketing, and distributing the franchise while the counterclaimant remained silent. *Id.* at 956. Given those investments, "it would be inequitable to permit [the counterclaimant] to wait forty years, then to profit from the risk inherent in [the respondents'] investment in the franchise." *Id.*; *see also Hot Wax*, 191 F.3d at 824 (investments made while the defendant's market position went unchallenged constituted prejudice sufficient to support laches).

The same reasoning applies here. According to the complaint, Kilcher raised no claim after viewing *Avatar* and receiving the copy of the 2005 Sketch and Cameron's note in 2010. Instead, Kilcher repeatedly sought opportunities to participate in the sequels. Compl. ¶¶ 68, 71–72. Meanwhile, Defendants continued investing in, producing, distributing, promoting, licensing, and commercializing the *Avatar* franchise. *Id.* ¶ 111. They released *Avatar: The Way of Water* in 2022 and *Avatar: Fire and Ash* in December 2025, only months before Kilcher filed suit. Compl. ¶¶ 72–73; RJN at 2–3. As in *Danjaq*, it would be inequitable to permit Kilcher to remain silent for 16 years, only to now seek to profit from Defendants'

investments in building a multi-film franchise with Neytiri at its center. 263 F.3d at 956.

### B.   Kilcher's Lanham Act Claim Alternatively Fails Because Her Complaint Concedes That The Alleged Use Went Unnoticed By The Public

Kilcher attempts to avoid laches by alleging that neither she nor the general public recognized any resemblance between her and Neytiri. Compl. ¶¶ 87, 112, 139. Even if those allegations are taken as true, Kilcher has still conceded that she was aware Cameron used her likeness in 2010 and she therefore failed to investigate her claim. But the allegation that no one recognized Kilcher in Neytiri provides a second, independent ground for this Court to dismiss Kilcher's claim: if neither Kilcher nor anyone else recognized her in Neytiri, then the alleged use could not plausibly have caused consumer confusion and the claim fails on the merits.

Section 43(a) of the Lanham Act prohibits the commercial use of "any word, term, name, symbol, or device, or any combination thereof … likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1). Although Lanham Act claims commonly concern trademarks, the Ninth Circuit has recognized that so-called "false endorsement" claims "can also be brought under § 43(a) relating to the use of a public figure's persona, likeness, or other uniquely distinguishing characteristic to cause such confusion." *Hara*, 146 F.4th at 876–77.

The alleged use of a celebrity's likeness, standing alone, does not give rise to liability. The use must be "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of the celebrity with the product at issue. 15 U.S.C. § 1125(a)(1)(A); *see also Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992) ("A false endorsement claim based on the unauthorized use of a celebrity's identity … alleges the misuse of a visual likeness

-19-

… *which is likely to confuse consumers* as to the plaintiff's sponsorship or approval of the product.") (emphasis added).

Because § 43(a) requires a confusing or deceptive effect on consumers, the question is whether consumers are likely to be confused as to whether the plaintiff endorsed or promoted the defendant's goods. *See Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017).[6]

On the face of Kilcher's complaint, the alleged use cannot support liability under § 43(a)(1)(A). Kilcher affirmatively alleges that "the general public *did not know* Neytiri was based on Plaintiff" during the 15 years following *Avatar*'s 2009 release. Compl. ¶ 139 (emphasis added). She likewise alleges that even she did not perceive the supposed use after viewing the first two films. *Id.* ¶¶ 73, 87. The statute requires that the challenged conduct be likely to cause confusion, mistake, or deception. If, as Kilcher alleges, neither she nor the public recognized her in Neytiri, then it logically follows that her likeness was not used in the film and any alleged use could not plausibly have led anyone to believe that Kilcher endorsed, sponsored, or was associated with the films. *See Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 112 (2d Cir. 2023) (unauthorized use of "anonym[ous]" face and body in advertisement "creates no risk of consumer confusion as conceived under the Lanham Act"); *Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40, 43 (N.D. Ill. 1996) (no customer confusion, and therefore no Lanham Act liability, where "the public [did] not even recognize" the plaintiff as the model for video game characters).

---

[6] As described *infra* at Part C, because the *Avatar* films are expressive works, Kilcher's claim is governed by the *Rogers* test, which is more protective of expression than the ordinary likelihood-of-confusion standard. But her claim fails even before *Rogers*: unless consumers perceived some identifying connection between Kilcher and Neytiri, the alleged use could not communicate her affiliation with, sponsorship of, or approval of the films. The complaint affirmatively alleges that neither the public nor Kilcher herself perceived any such connection.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**C.      Even If Kilcher Could Plead That The Public Recognized Any Resemblance Between Her And Neytiri (Which She Cannot), Her Lanham Act Claim Would Still Fail As A Matter Of Law**

**1.      Kilcher's False Endorsement Claim Fails As A Matter Of Law Under The *Rogers* Test**

Even if Kilcher had alleged that the general public *could* recognize any resemblance between her and Neytiri—rather than affirmatively alleging that it could not—her Lanham Act claim would still fail as a matter of law. Lanham Act claims involving expressive works[7] are governed by a more demanding standard than ordinary likelihood of confusion. When expressive works are at issue, "applying the traditional test fails to account for the full weight of the public's interest in free expression." *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). Hence, in cases involving expressive works the Ninth Circuit applies the two-pronged test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). *See, e.g.*, *Hara*, 146 F.4th at 877–80 (applying *Rogers* test to § 43(a) false-endorsement claim premised on the alleged depiction of a performer's likeness in an animated television series, its official teaser trailer, and a promotional still); *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239–41 (9th Cir. 2013) (applying *Rogers* to the alleged use of a former professional football player's likeness in video games).

Following the Supreme Court's opinion in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023), the Ninth Circuit has reaffirmed that *Rogers* remains the governing standard where, as here, the challenged use is part of

---

[7] The *Avatar* films are "expressive work[s] protected by the First Amendment." *Punchbowl*, 90 F.4th at 1028; *see Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011) (First Amendment protects movies and video games).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

an expressive work and is not source-identifying. *See Punchbowl*, 90 F.4th at 1028, 1031.[8]

Hara, decided after *Jack Daniel's* and addressing the same type of false endorsement theory Kilcher advances, is directly on point. There, the Ninth Circuit applied *Rogers* to a performer's claim that the unauthorized depiction of her likeness in an animated television series falsely implied her endorsement. The court held that *Rogers* applied because the plaintiff's likeness was not used to identify the source of the defendant's work. 146 F.4th at 877–80.

So too here. Kilcher does not allege that Defendants used her likeness as a trademark or source designation for the *Avatar* films. Her theory instead is that the 2005 Sketch incorporated a discrete section of her lower face—"from just under the nose down to the chin" (*id.* ¶ 50)—and that this alleged use somehow carried through into the expressive content of the films. Nothing in the complaint suggests that consumers recognized Kilcher's likeness or understood it to be a designation of the films' source. The alleged use is therefore non-source-identifying, and *Rogers* supplies the governing test. Kilcher's Lanham Act claim fails both prongs of that test on the face of the complaint.

**2.      *Rogers* Prong One: Kilcher's Own Allegations Establish Artistic Relevance**

Under the first prong of *Rogers*, a § 43(a) claim involving an expressive work is actionable only "if the use of the mark has 'no artistic relevance to the underlying work whatsoever.'" *Hara*, 146 F.4th at 883 (quoting *Punchbowl*, 90 F.4th at 1028). The threshold is deliberately low: artistic relevance "merely must be above zero." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008).

---

[8] *Jack Daniel's* held only that *Rogers* does not apply when an accused infringer uses another's mark "as a mark"—that is, to designate the source of the infringer's own goods. *Id.* at 145, 153–55.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

This "black and white" inquiry avoids requiring courts to undertake extensive "artistic analysis." *Brown*, 724 F.3d at 1243.

So, in *E.S.S.*, the Ninth Circuit held that a virtual strip club contributed to a video game developer's "artistic goal" of creating "a cartoon-style parody of East Los Angeles." 547 F.3d at 1100. Likewise, in *Brown*, the court held that the alleged use of a former professional football player's likeness was artistically relevant to a video game developer's goal of achieving "extreme realism" in its football simulator. 724 F.3d at 1243. And in *Hara*, a cameo of the plaintiff's animated likeness as an unspeaking character satisfied the artistic relevance requirement. 146 F.4th at 883–84.

Kilcher's own allegations readily satisfy the minimal threshold of artistic relevance. Defendants deny that Kilcher's likeness appears in the on-screen Neytiri or contributed in any way to the final character, and Kilcher acknowledges that her appearance went unrecognized by the viewing public. But *Kilcher* alleges that part of her appearance was used as a reference for the 2005 Sketch, and that her appearance somehow carried through to the character in the films. Compl. ¶¶ 48–51. Kilcher further alleges that the supposed use served artistic purposes: making Neytiri appealing and relatable and fostering an empathetic connection with audiences. *Id.* ¶¶ 48, 58. Taking them as true solely for purposes of this motion, these allegations necessarily establish that the alleged use had more than zero artistic relevance. If the fleeting background cameo in *Hara* cleared that threshold, Kilcher's own theory does to a far greater degree.

### 3. *Rogers* Prong Two: Kilcher Does Not—And Cannot—Allege That Defendants Explicitly Misled Consumers

Under the second prong of *Rogers*, if the challenged use is artistically relevant to an expressive work, a Lanham Act claim survives only if that use "explicitly mislead[s] consumers as to the source or the content of the work." *Hara*, 146 F.4th at 883 (cleaned up); *see also Brown*, 724 F.3d at 1243. The purpose of this prong is

-23-

to prevent defendants from "duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner." *E.S.S.*, 547 F.3d at 1100. The mere possibility of confusion is insufficient. There must be an "explicit indication," "overt claim," or "explicit misstatement" that causes consumers to believe the plaintiff endorsed or sponsored the work. *Brown*, 724 F.3d at 1245.

Kilcher alleges no such statement or representation. The complaint identifies no "explicit indication," "overt claim," or "explicit misstatement" that Kilcher endorsed, sponsored, or was otherwise affiliated with *Avatar*. Nor does it allege that Defendants identified Kilcher as the source or sponsor of the films or any part of their content. Her theory rests entirely on the supposed incorporation of part of her appearance into the expressive content of the films. Assuming that were true solely for the sake of Rule 12(b)(6), it does not constitute an explicit representation of endorsement. *See Brown*, 724 F.3d at 1246 ("Brown needs to prove that EA explicitly misled consumers about Brown's endorsement of the game, not that EA used Brown's likeness in the game.").

Indeed, Kilcher's own allegations foreclose any contrary inference. She alleges that she neither knew nor "could have known" of the supposed depiction of her likeness until she saw Cameron's interview on YouTube in August 2025. Compl. ¶ 87. If Kilcher herself could not perceive any alleged connection after viewing the films—which is understandable, as the Neytiri character is played by Zoe Saldaña—the films cannot plausibly be said to have explicitly communicated to audiences that Kilcher sponsored, endorsed, or was affiliated with them. *Hara*, 146 F.4th at 883.

Kilcher cannot argue in the alternative that Cameron's 2025 interview (or other statements by artists who worked on *Avatar* about the role Kilcher's likeness played in the early concept for Neytiri), as opposed to the motion picture itself, explicitly misled the public. Under prong two of *Rogers*, the misleading statement must take the form of "an explicit indication *on the face of the [work]*." *Brown*, 724

-24-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

F.3d at 1246 (quotation omitted) (emphasis added). Statements made years later in other media do not suffice. Moreover, Kilcher alleges only that Cameron and others publicly described their alleged *use* of Kilcher's likeness in the Neytiri sketch. Compl. ¶¶ 76–77, 82–83. Kilcher needs more to satisfy *Rogers*: she must "prove that [Defendants] explicitly misled consumers about [Kilcher's] endorsement of the [films], not that [Defendants] used [Kilcher's] likeness" in the franchise. *Brown*, 724 F.3d at 1246. Defendants' alleged statements in the complaint do nothing of the sort.

\*     \*     \*

Because Kilcher's own allegations establish artistic relevance and negate any explicit misleading, her false endorsement claim should be dismissed with prejudice.

### D. Kilcher's False Designation Of Origin Theory Fails As A Matter Of Law Under *Dastar*

Kilcher characterizes her Lanham Act claim as asserting both "false endorsement" and "false designation of origin." Compl. at p. 40. But the complaint does not plead a distinct false designation theory or allege facts differentiating it from false endorsement. *See* Compl. ¶¶ 112–14. To the extent Kilcher merely repackages her contention that the films falsely suggest her association with or approval of the *Avatar* films, *id*. ¶ 113, that theory fails under *Rogers* for the reasons stated above. To the extent she asserts a distinct claim concerning the "origin … of goods," it is foreclosed by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31–32 (2003). *See, e.g.*, *Kent v. Universal Studios, Inc.*, 2008 WL 11338293, at *1 (C.D. Cal. Aug. 15, 2008) (in a case involving a motion picture, dismissing plaintiff's § 43(a) false designation of origin theory under *Dastar* and false endorsement theory under *Rogers*).

*Dastar* involved a claim against a company (Dastar) that copied footage from a television series whose copyright had expired, edited it, and released it as a videotape set. Dastar manufactured and sold the set as its own product, with no attribution to the series' creators. 539 U.S. at 25–27.

-25-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

In rejecting a § 43(a) false designation of origin claim brought by the series creators, the Supreme Court construed the meaning of "origin of goods" in § 43(a). *Id.* at 29–38. The Court held that the "most natural understanding" of that phrase was "the source of wares"—that is, the "producer of the tangible product sold in the marketplace." *Id.* at 31. The phrase "origin of goods" was, in the Court's view, "incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id.* at 32. Because Dastar produced the physical videotapes it sold, Dastar alone was the "origin" of the goods, and the claim failed even though the creative content on the videotapes was copied almost entirely from the plaintiff's creative work. *Id.* at 38.

*Dastar* disposes of Kilcher's claim. If wholesale copying of another author's creative content into a product sold as one's own does not falsely designate the product's origin, then *a fortiori* Kilcher's allegation that part of her likeness was used in films that Defendants indisputably created cannot do so. At most, Kilcher alleges a claim for attribution based on an alleged contribution to the films' expressive content—not a misrepresentation about who produced them. She pleads no facts suggesting that Defendants represented that she was the "producer of the tangible product sold in the marketplace"—the *Avatar* films themselves—or that any consumer was confused about who made them. To the contrary, Kilcher acknowledges that Defendants "produc[ed], distribut[ed], promot[ed], licens[ed], and commercializ[ed] the Avatar film franchise." Compl. ¶ 111.

Courts in the Ninth Circuit routinely apply *Dastar* to dismiss § 43(a) claims of this kind—that is, claims that sound in a failure to attribute an alleged creative contribution rather than a misrepresentation about who produced the goods offered for sale. *See, e.g., Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1143–44 (9th Cir. 2008); *Harbour v. Farquhar*, 245 F. App'x 582, 583 (9th Cir. 2007) (affirming dismissal of a claim that the defendant violated the Lanham Act by licensing plaintiff's compositions while falsely claiming authorship); *Kent*, 2008

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

WL 11338293, at *3 (dismissing a false designation of origin claim based on failure to give the plaintiff "attribution or credit for his work in" defendant's movie). This Court should do the same.

### E.    The Court Should Decline To Exercise Supplemental Jurisdiction Over The State-Law Claims

Kilcher's Lanham Act claim is the sole basis for federal subject-matter jurisdiction. She does not plead complete diversity, Compl. ¶ 9, and her remaining seven claims arise entirely under California law.

If the Court dismisses the Lanham Act claim with prejudice, the Court need not reach Defendants' accompanying anti-SLAPP motion. A district court "may decline to exercise supplemental jurisdiction" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (affirming decision to decline supplemental jurisdiction where federal claims were dismissed at the pleading stage).

Every *Cohill* factor confirms this is the "usual case" for declining supplemental jurisdiction. Judicial economy and convenience favor declination because the seven state claims preponderate over the single federal claim. Of the complaint's 175 paragraphs, only 10 pertain to the Lanham Act claim. Declining supplemental jurisdiction once the federal claim is dismissed spares the Court from adjudicating more than a half-dozen state-law claims that belong, if anywhere, in a California court. And no judicial effort will be wasted: this case is in its infancy, no discovery has been taken, no scheduling order has issued, and the Court has made no substantive rulings.

-27-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Comity points the same way. Defendants challenge the state-law claims via motion under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, a state statute that federal courts in this Circuit apply in modified form. *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). A California court, by contrast, can apply the statute as enacted by the California Legislature. Declining supplemental jurisdiction would therefore promote the "surer-footed reading of applicable law" that the Supreme Court has identified as an important consideration when only state-law claims remain. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Declining supplemental jurisdiction will not prejudice Kilcher. The Court may dismiss the state-law claims without prejudice to Kilcher refiling them in state court. Section 1367(d) tolls the applicable limitations periods while this action is pending and for 30 days after dismissal. 28 U.S.C. § 1367(d). Kilcher will lose no substantive claim or remedy merely because her state-law claims proceed, if at all, in a trial court in the state whose law governs those claims.[9]

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Kilcher's Lanham Act claim (Count I) with prejudice and decline to exercise supplemental jurisdiction over her state-law claims (Counts II through VIII) under 28 U.S.C. § 1367(c)(3).

---

[9] By urging this course of action, Defendants do not waive their anti-SLAPP motion or any entitlement to fees under § 425.16(c) if the Court either denies the motion to dismiss the Lanham Act claim or grants that motion but exercises supplemental jurisdiction over Kilcher's state-law claims.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

DATED: July 28, 2026                    MUNGER, TOLLES & OLSON LLP


                                        By:    _/s/ Kelly M. Klaus_
                                               KELLY M. KLAUS
                                               Attorneys for Defendants

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the moving Defendants, certifies that this brief contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 28, 2026                    MUNGER, TOLLES & OLSON LLP


By:    _*/s/ Kelly M. Klaus*_____
                    KELLY M. KLAUS
                    Attorneys for Defendants

-30-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS