UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Q'ORIANKA KILCHER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JAMES CAMERON, et al.,<br><br>Defendants. | Case No. 2:26-cv-04832-WLH-DSR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [34]** |

The Court is in receipt of Defendants James Cameron; Lightstorm Entertainment, Inc.; Twentieth Century Fox Film Corporation; The Walt Disney Company; Avatar Alliance Foundation; Stan Winston Studio, LLC; and Industrial Light and Magic's (collectively, "Defendants") Motion to Dismiss Plaintiff's Federal Lanham Act Claim ("Motion" or "Mot.," Dkt. No. 34), Plaintiff Q'Orianka Kilcher's Opposition to the Motion to Dismiss ("Opposition" or "Opp.," Dkt. No. 40) and Defendants' Reply in Support of the Motion to Dismiss ("Reply," Dkt. No. 47).

The Court is also in receipt of Defendants' Special Motion to Strike Plaintiff's State-Law Claims ("Motion to Strike," Dkt. No. 35), Plaintiff's Opposition to the Motion to Strike (Dkt. No. 41), Plaintiff's Declaration in Opposition to the Motion to

Strike (Dkt. No. 42) and Defendants' Reply in Support of the Motion to Strike (Dkt. No. 46).

The Court considers the Motion to Dismiss and the Motion to Strike (together, "the Motions"). On September 18, 2026, the Court held a hearing on the Motions. At the hearing, the Court adopted its tentative ruling as its final ruling. The Court now issues that ruling as its written Order. For the reasons below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Count I is **DIMISSED** with leave to amend. Because Count I is Plaintiff's sole federal claim and the Court grants Plaintiff leave to amend that claim, the Court **RESERVES** ruling on Defendants' Motion to Strike pending the filing of Plaintiff's amended complaint or expiration of the deadline to amend.

## I. BACKGROUND

### A. Factual Background

It is undisputed that Plaintiff portrayed Pocahontas at age 14 in Terrence Malick's *The New World* (2005). (Compl. ¶ 11-14; Mot. At 11). It is further undisputed that in an April 2024 interview, Defendant Cameron points to an early development drawing of Neytiri, and explains,

> We hadn't cast Zoe Saldana yet. And–And–But I knew that the design of Neytiri was going to be the keystone for all the Na'vi characters, because the question was how human do we want to be? How alien do we want to be? And we had a lot of designs coming in. . . . They kept coming back so alien that I didn't feel an empathetic connection. So I tried to do — I did this drawing to just give the art department a kind of an inspiration. I wanted her to be a person that we wanted to know. . . . But the actual–the source for this was–was a photograph that was in the *LA Times* as part of the promotion for *The New World*. There's a young actress named Q'Orianka Kilcher who played Pocahontas in *The New World*. So, this is actually her–her lower face; she had a very interesting face. And I wound up meeting her years later, and I gave her a signed print of this . . . which she has up over her fireplace, because – not that she was the inspiration for the character, but I just wanted to show how a specific person's look could come through in the character. . . . The second we cast Zoe, we started—you know, Neytiri suddenly looked like Zoe. So, the question is, how did we get to that point?"

(Mot. Ex. 1, *see* Compl. ¶ 49-50; Mot. at 11).

Plaintiff alleges Defendant Cameron circulated that sketch to his art department, "explicitly instruct[ing] them to carry Q'Orianka's features forward as a source input and base model in all subsequent stages of Neytiri's design," and gave designers multiple photographs of Plaintiff. (Compl. ¶ 51; Opp. at 2-3). Plaintiff alleges that lead Character Designer Jordu Schell confirmed the team "was looking extensively at a photo of Q'Orianka Kilcher" while sculpting a maquette Defendant Cameron approved, declaring "That's her, don't change a thing," thereby "freezing" the Q'Orianka-based sculpt as the approved design. *Id.* Plaintiff alleges the approved maquette was sent to Gentle Giant Studios, which laser-"scan[ned] every aspect of this sculpture" into a digital model propagated to downstream vendors including Weta Digital and Industrial Light & Magic. (Compl. ¶ 22-25, 53; Opp. at 3).

Plaintiff alleges designers were directed to "retain the lower part of the face . . . from the philtrum, just under the tip of the nose, to the bottom of the chin," and Defendant Cameron admitted Plaintiff's face was the "keystone" of the design-without which "the whole look falls apart." (Compl. ¶ 54). Plaintiff alleges that once scanned, the single approved sculpt became the reusable digital asset for "the actual film," such that "every frame of *Avatar* featuring Neytiri is effectively a derivative work of Plaintiff's likeness." (Compl. ¶ 53, 57). Plaintiff acknowledges that the public "may not have immediately recognized" her face in Neytiri and alleges that the use of CGI made the asserted source of the likeness more difficult to detect. (Compl. ¶ 104).

Defendants deny that Kilcher's likeness appears in the on-screen character of Neytiri, or that Kilcher served as the "basis" or "source" of that character in the Avatar films in any respect. (Mot. at 7). Defendants dispute that Neytiri resembles Plaintiff and allege that the character resembles Zoe Saldaña, the actor who plays Neytiri. *Id.* It is undisputed that Disney, as successor-in interest to Fox, re-released *Avatar* and produced sequels—including Avatar: The Way of Water (2022)—carrying forward the Neytiri design. (Compl. ¶ 20, 34; Mot. Ex. 1).

Plaintiff's corroborating evidence includes Defendant Cameron's recorded interview, his 2010 signed note, crew statements by Jordu Schell and John Rosengrant, records of Gentle Giant's laser scanning, and published production art in *Avatar: The Art of the Movie and the Tech Noir* art book. (Compl. ¶ 107). Plaintiff alleges that all of this occurred without Plaintiff's knowledge or consent; Defendants never sought permission from her or her family and never compensated her. (Compl. ¶ 55). Plaintiff also alleges that her agent sought a Neytiri audition in 2007, the casting office refused, and the role went to Zoe Saldaña, who performed a character already sculpted from Plaintiff's face. (Compl. ¶ 56-57). Further, Plaintiff alleges that when Saldaña first met Mr. Cameron, a fully sculpted Neytiri maquette built from Plaintiff's features already sat on his table. *Id.* Plaintiff alleges Defendants then used the character commercially: *Avatar* grossed approximately $2.92 billion worldwide, and Neytiri's image "graced posters, toys, and advertisements around the globe," yet Plaintiff was never acknowledged or compensated. (Compl. ¶ 58-59). Plaintiff further alleges that Defendants used Neytiri in merchandise, licensed goods, theme-park attractions, advertising and other commercial contexts. (Compl. ¶ 111).

Plaintiff alleges she and Defendant Cameron first met on March 6, 2010, at a Global Green charity event, after which an assistant presented Plaintiff a framed Neytiri sketch bearing Defendant Cameron's handwritten note: "Your beauty was my early inspiration for Neytiri. Too bad you were shooting another movie. Next time." (Compl. ¶ 61–63). Plaintiff alleges the note created a misleading narrative that she was merely an abstract "inspiration" who was unavailable, concealing that her actual facial geometry had been replicated and carried through the production pipeline. Plaintiff understood the note as honoring her "in some little way" and thanked Mr. Cameron warmly, with no notice of legal injury. (Compl. ¶ 64-69).

Plaintiff alleges that a series of cordial contacts reinforced that understanding and lulled Plaintiff into inaction: a July 2017 meeting at Lightstorm about the sequels (following an NDA) at which Defendant Cameron never disclosed her contribution; a

May 2022 email from Plaintiff referencing the "Next time" promise; a November 2022 exclusive screening and after-party for *Avatar: The Way of Water* where Mr. Cameron told her "This is a historic moment"; and a January 2023 message through his assistant that he "would like to stay in touch." (Compl. ¶ 70–75).

Plaintiff alleges she realized her likeness had been used only because of the 2024 interview. (Compl. ¶ 77-78). Plaintiff first encountered a circulating clip in August 2025, immediately investigated archival materials—behind-the-scenes footage, *Avatar: The Art of the Movie, the Tech Noir* art book, crew statements by Jordu Schell and John Rosengrant, 2023 Blu-ray footage, and Stan Winston School materials depicting the identical sketch-to maquette-to-scan-to-digital pipeline-and then filed suit. (Compl. ¶ 78-85). Plaintiff alleges the limitations period is tolled: she neither knew nor could reasonably have known of the misappropriation before August 2025 because Defendants actively obscured it, Mr. Cameron's 2010 note was a "calculated half-truth" and Plaintiff was a minor when the initial taking occurred in 2005. (Compl. ¶ 86–90).

Plaintiff alleges that, once consumers learn of the asserted connection between her facial features and Neytiri, they may infer that she participated in, authorized or consented to the use of her likeness, or that she endorsed, was compensated by or was otherwise affiliated with the *Avatar* franchise. (Compl. ¶ 112).

### B. Procedural Background

On May 5, 2026, Plaintiff filed this action. (Dkt. No. 1). Plaintiff's Complaint outlines eight causes of action against all Defendants: (1) false endorsement and false designation of origin in violation of Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) common-law commercial misappropriation of likeness; (3) violation of California's statutory right of publicity (Cal. Civ. Code § 3344); (4) false light invasion of privacy; (5) intrusion upon seclusion (invasion of privacy); (6) public disclosure of private facts; (7) statutory unauthorized digital replica in sexually

explicit depiction in violation of Cal. Civ. Code § 1708.86; and (8) intentional interference with prospective economic advantage. (*See generally* Compl.).

Defendants filed the Motion to Dismiss and the Motion to Strike on July 28, 2026. (Dkt. Nos. 34, 35). Plaintiff filed Memoranda in Opposition to Defendants' Motions on August 18, 2026. (Dkt. Nos. 40, 41). Plaintiff filed a Declaration in Opposition to Motion to Strike on August 19, 2026. (Dkt. No. 42). The Court, in its discretion, considers the untimely Memoranda. Defendants then filed a Reply in Support of Motion to Dismiss and a Reply in Support of Motion to Strike ("Replies," Dkt. Nos. 47, 46).

## II. DISCUSSION

Defendants do not seek to dismiss the Complaint in its entirety. Instead, Defendants seek to dismiss with prejudice Plaintiff's only federal law claim, Count I, false endorsement and false designation of original in violation of Lanham Act, 15 U.S.C. § 1125(a)(1)(A), on four grounds.

First, Defendants argue that laches bars the claim. (Mot. at 2). Second, Defendants argue that Plaintiff failed to plausibly allege conduct likely to "cause confusion," "cause mistake" or "deceive" consumers concerning her affiliation with, sponsorship of, or approval of the *Avatar* films. *Id.*; 15 U.S.C. § 1125(a)(1)(A). Third, Defendants argue the claim is barred under the *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) test to the extent it challenges use of the Plaintiff's alleged likeness in expressive works and related promotional materials. (Mot. at 2 (citing *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028 (9th Cir. 2024)). Fourth, Defendants argue Kilcher's "false designation of origin" theory fails because "origin" under the Lanham Act refers to the producer of the goods offered for sale, not to a person claiming to have made an uncredited creative contribution to the work embodied in those goods. *Id.* (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31-32 (2003)).

As explained below, the Court concludes that laches does not provide a basis for dismissal at the pleading stage but that Count I nevertheless fails to state a claim. Plaintiff's theories based on the *Avatar* films and related promotional uses cannot proceed under *Rogers*, while the Complaint does not sufficiently allege that Plaintiff's asserted identity or identifying characteristic is used in a source-identifying or otherwise actionable false-endorsement manner in connection with the asserted standalone commercial uses. Accordingly, Count I is **DISMISSED** with leave to amend.

Defendants further argue that, upon dismissal of Count I, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts II-VIII). The Court **RESERVES** ruling on that issue.

**A. Legal Standard**

Defendants move to dismiss Plaintiff's Lanham Act claim under Rule 12(b)(6). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). The Court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The Court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion, the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

### B. Laches Does Not Establish an Obvious Bar on the Face of the Complaint

Laches is an affirmative defense requiring a defendant to establish both unreasonable delay by the plaintiff and resulting prejudice. *Couveau v. American Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). The Lanham Act contains no express statute of limitations, and the Ninth Circuit has recognized some uncertainty as to whether an analogous state limitations period operates as an independent bar to a Lanham Act claim. *Jarrow Formulas*, 304 F.3d at 836 ("The proper interplay between laches and the statute of limitations . . . is somewhat elusive."); *see also Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1023 (9th Cir. 2018) (citations omitted) (quotations omitted) ("[T]he federal Lanham Act has no statute of limitations. Rather, the Lanham Act vests courts with the power to grant relief according to the principles of equity."). The Court need not resolve that question here. Whatever role a statute of limitations may independently play, Ninth Circuit precedent establishes that the analogous statute of limitations period supplies the benchmark for determining the applicable presumption in the laches analysis. *Jarrow*, 304 F.3d at 835-38; *Pinkette*, 894 F.3d at 1025.

The Ninth Circuit employs a two-step framework. First, the Court determines whether suit was filed within the most analogous state-law limitations period. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 878 (9th Cir. 2014). If suit was filed within that period, there is a strong presumption against laches; if the analogous period had expired, the presumption is reversed. *Pinkette*, 894 F.3d at 1025. The most analogous limitations period for claims under § 43(a)(1)(A) is California's four-year limitations period for trademark infringement claims. *Id.* The limitations period, for purposes of fixing the laches presumption, runs from the time Plaintiff "knew or should have known about [her] § 43(a) cause of action." *Jarrow*, 304 F.3d at 838.

Second, the Court considers whether application of laches is equitable under the six *E-Systems* factors: "(1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by junior user because of senior user's delay." *Pinkette*, 894 F.3d at 1025 (quoting *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983)); *see also Ramirez v. Navarro*, No. 23-55112, 2024 WL 1874993, at *1 (9th Cir. Apr. 30, 2024).

Because laches is an affirmative defense, however, dismissal under Rule 12(b)(6) is appropriate only where the defense establishes an "obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pacific Railroad Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)). Where the allegations and judicially noticeable materials instead raise disputed issues of fact concerning the defense, dismissal under Rule 12(b)(6) is improper. *Id.* (citing *Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir. 1984)).

Thus, at this stage, the threshold question is whether the pleadings establish as a matter of law when Plaintiff knew or reasonably should have known of her potential § 43(a) cause of action. Defendants contend that Plaintiff was on inquiry notice no

later than 2010 because, by that time, she had viewed *Avatar*, possessed the 2005 sketch, and received Cameron's note stating that "[y]our beauty was my early inspiration for Neytiri." (Reply at 6-7; Compl. ¶ 63). Defendants further rely on Plaintiff's allegation characterizing the note as "acknowledging [Cameron's] use of her likeness." (Reply at 7; Compl. ¶ 175(d)). Defendants argue that these facts triggered a duty of inquiry regardless of what Plaintiff later learned concerning the extent or manner of the alleged use. (Reply at 6-7).

The Complaint does not unambiguously establish that inference. Plaintiff alleges that the 2010 disclosure conveyed materially less than what she later discovered. Plaintiff alleges that she understood the statement to mean that Cameron had drawn artistic inspiration from her public work, not that her actual facial features had been replicated and incorporated into the *Avatar* production pipeline. (Compl. ¶¶ 64-69). The pleaded circumstances permit a reasonable inference that the information then available disclosed an inspirational or reference use, rather than facts that necessarily would have alerted a reasonable person to the allegedly actionable false-endorsement use. (Compl. ¶¶ 60-69; Opp. at 4-5).

Defendants may ultimately establish that the information available in 2010 was sufficient to place a reasonable person on inquiry notice. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049 (9th Cir. 2008) and *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055 (9th Cir. 2012), support Defendants' general proposition that complete knowledge of every fact is unnecessary. (Reply at 6-7). But those authorities do not eliminate the antecedent question as to whether the facts then known were sufficient to trigger inquiry into the relevant potential claim. Under *Jarrow*, the relevant inquiry is when Plaintiff knew or should have known of her potential § 43(a) cause of action, not merely when she became aware of facts bearing some relationship to Defendants' use of her appearance.

Defendants' merits position reinforces why the pleadings do not compel only one inference concerning the 2010 notice date. Defendants argue that Plaintiff's

likeness was unrecognizable in the on-screen Neytiri to Plaintiff and the public and, on that premise, that the films could not plausibly communicate Plaintiff's sponsorship, endorsement, or affiliation with Avatar. (Reply at 11-12). Defendants also contend that the alleged use was expressive rather than source-identifying. (Reply at 13-14). Those arguments do not foreclose a laches defense, but they underscore the unresolved question whether the facts available in 2010 necessarily would have alerted a reasonable person to a potential § 43(a) false-endorsement claim.

Nor does Complaint paragraph 175(d) necessarily resolve the issue. Although Plaintiff characterizes Cameron's note as acknowledging "use of her likeness," the allegation must be read with the Complaint's more specific allegations concerning what was disclosed, what remained undisclosed and the resulting misunderstanding. (Compl. ¶¶ 60-69, 75, 175(d); Opp. at 11). At this stage, the Court cannot equate acknowledgment of an "early inspiration" with knowledge, as a matter of law, of the allegedly actionable use without drawing a disputed inference in Defendants' favor.

Accordingly, the Court does not determine as a matter of law that Plaintiff lacked inquiry notice in 2010, nor that Defendants cannot ultimately establish laches. The Court concludes only that the Complaint does not establish, as a matter of law, that Plaintiff knew or should have known of her potential § 43(a) cause of action in 2010. Because that disputed predicate determines the period of alleged delay, laches does not present an "obvious bar" on the face of the Complaint. *See ASARCO*, 765 F.3d at 1004. The Motion to Dismiss therefore is **DENIED** to the extent it rests on laches.

Because the notice issue is sufficient to dispose of the laches ground at this stage, the Court need not resolve Plaintiff's alternative arguments concerning fraudulent concealment, minority, continuing conduct, deliberate misconduct or the parties' competing prejudice theories. (Opp. at 11-15; Reply at 7-10).

### C. Substantive Sufficiency of Count I

Count I combines several asserted uses of Plaintiff's alleged likeness. Defendants contend that Count I fails to state a claim under *Rogers*, *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023) and *Dastar*. (Mot. at 21-27). Because the applicability of those doctrines turns in part on the nature and function of the challenged use, the Court separately considers the categories of use alleged in the Complaint: (1) the alleged incorporation of Plaintiff's likeness into Neytiri in the *Avatar* films; (2) promotional uses related to the *Avatar* films and (3) merchandise, licensing, theme-park attractions and other commercial uses. (Compl. ¶¶ 108-113; Opp. at 17-19).

*i. Alleged Incorporation of Plaintiff's Likeness into Films*

Section 43(a)(1)(A) ordinarily asks whether a defendant's use of a plaintiff's asserted identifying material is likely to cause confusion concerning affiliation, connection, association, origin, sponsorship, or approval. 15 U.S.C. § 1125(a)(1)(A). A person's visual likeness may serve as the relevant identifying material for a false endorsement claim. *Hara v. Netflix, Inc.*, 146 F.4th 872, 879-84 (9th Cir. 2025). When the challenged use is part of an expressive work, however, the Ninth Circuit applies the *Rogers* framework unless the challenged identifying material is used as a source identifier for the defendants' goods. *Id.* At 880-82; *see also Punchbowl*, 90 F.4th at 1028-32.

Plaintiff expressly concedes that, to the extent Count I rests on incorporation of her alleged features into the films themselves, *Rogers*'s artistic-relevance threshold is satisfied. (Opp. at 18). The remaining question, then, is whether the pleaded use explicitly misleads as to Plaintiff's relationship to the work.

That allegation concerns an asserted inference of endorsement rather than an overt claim or explicit misstatement of endorsement within the expressive work. On this issue, *Hara* is instructive. There, the Ninth Circuit held that *Rogers* barred a Lanham Act Claim regarding the alleged use of the plaintiff's likeness in an animated

series, related teaser trailer and still image because the use was artistically relevant and the defendants made no "explicit indication, overt claim, or explicit misstatement" concerning the plaintiff's relationship to the work. *Id.* at 884-85. The court reached that conclusion notwithstanding allegations of actual consumer confusion, explaining that the inquiry focuses on "the nature of the behavior of the identifying material's user, not the impact of the use." *Id.* at 885 (quoting *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1246 (9th Cir. 2013)).

The same reasoning applies to Plaintiff's film-based theory. Plaintiff concedes that the alleged use of her likeness in *Avatar* satisfies *Rogers's* artistic-relevance requirement. (Opp. at 18). The Complaint identifies no explicit statement in the films representing that Plaintiff sponsored, endorsed, approved or was affiliated with *Avatar*. Rather, Plaintiff alleges that consumers may infer such an association after learning that her likeness allegedly served as the design foundation for Neytiri. (Compl. ¶ 112). Under *Hara*, that alleged inference, even if it produces consumer confusion, does not satisfy *Rogers'* explicit-misleadingness requirement. Accordingly, *Rogers* precludes Count I to the extent it is based on the alleged incorporation of Plaintiff's likeness into the *Avatar* films themselves.

Plaintiff's characterization of her likeness as "raw design material" does not alter the *Rogers* analysis applicable to the alleged use of her likeness in the films. (Opp. at 18). Plaintiff argues that *Rogers* does not apply because Defendants allegedly used her facial geometry as an "uncredited production input rather than as expressive commentary on Plaintiff." (*Id.*) But *Rogers* does not require that the challenged use comment on nor convey a message about the person whose identifying material is used. *See Brown*, 724 F.3d at 1245-46. Rather, the relevant inquiry is whether the challenged use of that identifying material is artistically relevant to the expressive work and, if so, whether it explicitly misleads as to Plaintiff's relationship to the work. *Id.* Because Plaintiff concedes artistic relevance as to the alleged incorporation of her likeness into the *Avatar* films, her characterization of the alleged

likeness as production "source material" does not independently remove the resulting expressive use from *Rogers*. (Opp. at 18).

Plaintiff also relies on Cameron's statements in the 2024 Tech Noir interview, which allegedly publicly identified Plaintiff's facial features as a source for Neytiri's design and thereby created the association underlying Plaintiff's present theory of confusion. (Compl. ¶¶ 76-78; Opp. at 15-17). Cameron's statements concerning Plaintiff's relationship to Neytiri bear on whether Defendants made the type of "explicit indication, overt claim, or explicit misstatement" concerning Plaintiff's relationship to the expressive work required under *Rogers*. *Hara*, 146 F.4th at 883-85; *Brown*, 724 F.3d at 1245-47.

The interview allegations nevertheless do not cure the deficiency in Plaintiff's theories concerning expressive uses. As pleaded, Cameron expressly disclosed an asserted historical connection between Plaintiff's facial features and Neytiri's design. (Compl. ¶¶ 76-78). But that connection is not alleged to be false. Rather, Plaintiff alleges that consumers may infer from the disclosure that she "participated in, authorized, or consented to" the use of her likeness, or that she "endorsed, was compensated by, or was otherwise affiliated with the franchise." (Compl. ¶ 112.) The Complaint does not identify a statement in the interview expressly representing any such additional relationship. Thus, even assuming Cameron's statements caused consumers to associate Plaintiff with Neytiri, the pleaded statements do not themselves explicitly misrepresent the nature of Plaintiff's relationship to the works in the manner required under *Rogers*.

To the extent Count I asserts a false-designation-of-origin theory based on Plaintiff's allegation that her facial features supplied source material for Neytiri's design, that theory is foreclosed by *Dastar*. The Supreme Court held that "origin of goods" under § 43(a)(1)(A) refers to the producer of a tangible product sold in the marketplace. *Dastar*, 539 U.S. at 31-38. Thus, even accepting Plaintiff's allegation that her likeness, or a photograph depicting her likeness, served as a source for aspects

of Neytiri's design, that allegation does not make Plaintiff the statutory "origin" of the resulting *Avatar* works or products.

Although the Complaint expressly pleads "false designation of origin," (Compl. ¶¶ 108-17), Plaintiff's Opposition disclaims "any attribution theory" and maintains that Count I does not rest on such a theory, but rather alleges confusion as to whether she sponsored, endorsed, was affiliated with or consented to the challenged uses. (Opp. at 20-21). Accordingly, Count I cannot proceed to the extent it alleges that Plaintiff is the "origin" of the *Avatar* works or products by virtue of the alleged use of her facial features as source material. *Dastar*, however, does not independently dispose of Plaintiff's distinct false-endorsement theory that Defendants' use of her identifying characteristics is likely to cause confusion concerning her affiliation, connection, association, sponsorship or approval. *See* 15 U.S.C. § 1125(a)(1)(A).

*ii. Promotional Uses Related to the Expressive Works*

Plaintiff also identifies advertising and promotional materials using Neytiri. (Compl. ¶ 111). But the fact that a use is promotional or commercial does not alone remove it from *Rogers*. In *Hara*, the Ninth Circuit held that *Rogers* applied not only to the alleged likeness as it appeared in the expressive work, but also to its appearance in an official teaser and promotional still image. *Hara*, 146 F.4th at 882-83 (citing *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017)). As *Hara* explained, promotional activities, "even those that produce revenue," may remain auxiliary to the expressive work. *Id.* at 883 (quoting *Twentieth Century Fox*, 875 F.3d at 1197).

Accordingly, to the extent Plaintiff challenges only the depiction of Neytiri in advertising, trailers, still images or other promotion auxiliary to the *Avatar* films, and Plaintiff's identifying material is not itself used as a source identifier, that theory is subject to the same *Rogers* analysis and fails for the same lack of explicit misleadingness identified above.

*iii. Merchandise, Licensing, Theme-Park and Other Commercial Uses*

*Rogers* does not apply when the challenged identifying material is used as a mark, that is, "at least in part" for source identification. *Jack Daniel's*, 599 U.S. at 156-59; *Punchbowl*, 90 F.4th at 1030-32. In that circumstance, the challenged use is subject to the ordinary likelihood-of-confusion inquiry even if it has expressive content. *Jack Daniel's*, 599 U.S. at 158-59. The presence of expressive content does not determine whether *Rogers* applies. Rather, the relevant threshold question is whether the challenged identifying material is being used as a mark or source identifier. *Id.* at 156-59.

Plaintiff's present allegations concerning merchandise and other commercial uses present a separate pleading problem. Plaintiff alleges that Defendants distributed Neytiri through merchandise, licensed goods, theme-park attractions, advertising and other commercial contexts. (Compl. ¶ 111). But the Complaint identifies these uses only categorically and does not allege facts concerning particular consumer-facing uses from which the Court could plausibly infer a false representation concerning Plaintiff's affiliation, connection, association, sponsorship or approval. The alleged chain of use—Plaintiff's facial features incorporated into Neytiri followed by commercial use of the character—does not by itself establish that a particular commercial use communicates such a representation. Nor does the mere appearance of Neytiri on merchandise establish that Plaintiff's asserted identifying characteristic is being used as a source identifier for purposes of *Jack Daniel's*.

*Punchbowl* illustrates the distinction. There, the challenged term itself was used to identify and distinguish the defendant's news products. *Punchbowl*, 90 F.4th at 1030-32. Here, by contrast, the Complaint alleges commercial use of the Neytiri character but does not allege concrete facts showing that Plaintiff's likeness, as distinct from Neytiri, *Avatar* or other franchise indicia, is used as a source identifier for Defendants' goods or services.

Nor does Plaintiff's alleged "retroactive public association" independently cure

the pleading deficiencies. Plaintiff alleges that, after consumers learn of the asserted historical connection between her face and Neytiri, continued commercialization may cause them to infer that she participated in, authorized, or consented to the use of her likeness, or that she endorsed, was compensated by or was otherwise affiliated with the franchise. (Compl. ¶ 112). But the pleaded disclosure of the alleged historical design connection, which Plaintiff alleges to be true, does not itself falsely represent that connection. Rather, Plaintiff's theory depends on consumers inferring from that disclosed connection a different relationship between Plaintiff and the franchise. The Complaint does not presently identify a particular commercial use that communicates, expressly or by its context, that Plaintiff has such a relationship with Defendants. Accordingly, the alleged public association, without additional facts concerning the particular commercial use, does not itself plausibly allege a false or misleading representation concerning Plaintiff's affiliation, connection, association, sponsorship or approval.

Plaintiff requests leave to amend to add "concrete, consumer-facing examples" involving merchandise, advertising, licensed goods, theme-park communications and social media in which the asserted Kilcher/Neytiri association allegedly functions as an endorsement or source identifier. (Opp. at 19). Merely identifying additional Neytiri merchandise, however, would not cure the defect identified here. Any amended complaint must plausibly allege how Plaintiff's own asserted identity or identifying characteristic, as distinct from the Neytiri character or *Avatar* branding, is used in a manner that falsely or misleadingly communicates Plaintiff's affiliation, connection, association, sponsorship or approval.

The Court therefore does not hold that every conceivable merchandise, licensing, theme-park or other consumer-facing use would necessarily be protected by *Rogers*. Rather, the Court merely holds that the present Complaint does not plead sufficient facts to plausibly allege either the type of source-identifying use that would place a challenged use outside *Rogers* under *Jack Daniel's* and *Punchbowl*, or a

particular commercial use that otherwise plausibly communicates a false or misleading affiliation, connection, association, sponsorship or approval. Because Plaintiff expressly represents that she can plead concrete consumer-facing examples, and because the Court cannot conclude at this stage that amendment would necessarily be futile, Plaintiff will be afforded leave to amend this theory. The standalone commercial-use theory therefore cannot proceed on the present pleading.

* * *

Plaintiff separately argues that likelihood of confusion presents a factual question inappropriate for resolution at the pleading stage. (Opp. at 15-17). The Court need not determine at this stage whether Plaintiff has plausibly alleged consumer confusion under the traditional likelihood-of-confusion factors, however. The deficiencies identified above are antecedent to that inquiry. For the film and promotional uses subject to *Rogers*, Plaintiff has not alleged the explicit misleadingness required. For the asserted standalone commercial uses, the Complaint does not presently allege the particular consumer-facing uses and context from which a false or misleading representation of Plaintiff's affiliation, connection, association, sponsorship or approval could plausibly be inferred. Thus, Plaintiff's allegations of likely consumer confusion do not cure the deficiencies identified above.

Accordingly, Count I is **DISMISSED** with leave to amend.

## III. SUPPLEMENTAL JURISDICTION AND DEFENDANTS' SPECIAL MOTION TO STRIKE

Because Count I is Plaintiff's sole federal claim and the Court grants Plaintiff leave to amend it, the Court **RESERVES** ruling on Defendants' Special Motion to Strike. The Court likewise does not presently decide whether to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). Plaintiff may file an amended complaint within twenty-one (21) days of this Order. If Plaintiff does not timely amend, or if the federal claim is later dismissed without further leave to amend, the Court may then

determine whether to decline supplemental jurisdiction over the remaining state-law claims without reaching the merits of the Special Motion to Strike.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss Plaintiff's Lanham Act claim is **GRANTED IN PART** and **DENIED IN PART**. Count I is **DISMISSED** with leave to amend. The Court **RESERVES** ruling on Defendants' Motion to Strike.

**IT IS SO ORDERED.**

Dated: September 21, 2026

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE